## Breden *versus* Gilliland, Executor, &c.

1. There is no limitation to the power of a court to open a judgment by default for want of an appearance.

2. The lien of the judgment on realty is not thereby disturbed, and the court may impose such terms as will secure the lien of a *fi. fa.* on personalty.

3. The opening of such judgment is discretionary and cannot be reviewed.

4. A court has not power to strike off a judgment regular on its face.

5. If there be a fact which ought to appear on the record and does not and which would render the judgment irregular, it should be put on the record by amendment, *nunc pro tunc.*

6. In an action in the Common Pleas for a legacy, a plea of want of assets and other pleas were filed; the jury could not pass on the plea of want of assets, but only on the other pleas.

7. The jury is to decide the plaintiff's right to the legacy and its amount; the question of assets is to be determined subsequently by the Orphans' Court.

8. When a legacy is exclusively payable out of lands, the proceeding is by petition in the Orphans' Court.

9. The primary funds to pay legacies, whether charged on land or not, is the personal estate, unless special provision be made to the contrary, and the legatee should exhaust the personal estate, before proceeding against the real estate.

November 14th 1870.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Lawrence county:* Of October and November Term 1870, No. 199.

This was an action of debt, commenced August 2d 1860, by Maria Bredin against Robert Gilliland and Joseph Morrison, executors, &c., of Josiah Hutchman, deceased, in which Gilliland alone was served.   On the 7th of June 1861, the court, on motion of the plaintiff, entered judgment against the defendant for default of appearance and directed the prothonotary to liquidate the judgment, which was done June 22d against Gilliland at $210.65.

On the 10th of June 1865, Gilliland moved to open the judgment and to be let into a defence.   On the 28th of June 1867, the judgment was opened, &c., the case "to be tried without delay or continuance, the lien of the judgment to continue, and no objections to be taken to the form of action or the jurisdiction of the court."   The plaintiff declared in debt for a legacy under the will of Josiah Hutchman, deceased.   The defendant pleaded,

[Breden *v.* Gilliland.]

"nil debet," "payment and payment with leave," &c. On the 9th of September, the court granted the defendant leave to withdraw his pleas and file a demurrer. September 14th the plaintiff withdrew his declaration by leave of the court. The case was tried May 19th 1868 and a verdict rendered for the plaintiff for $337.08. Judgment was entered on the verdict September 27th 1868. On the 12th of February 1869, the defendant moved the court to set aside the judgment entered on the verdict and to strike it from the record; on the 26th of March, the rule was made absolute. On the same day the court filed an opinion and made this order: "We direct the prothonotary to enter judgment upon the verdict (if the jury fee is paid), and we give the defendant six weeks stay of execution." Judgment was entered same day for $337.08 with interest as of May 18th 1868. A writ of error was taken to this judgment which was reversed by the Supreme Court and a *venire de novo* awarded (13 P. F. Smith 393).

On the 2d of May 1870, the defendant by leave of the court added the plea of want of assets.

The case was tried June 22d 1870, before McGuffin, P. J., The plaintiff gave in evidence the will of Josiah Hutchman, deceased, proved March 26th 1855, in which are the following clauses: "First, to Hester Maria Breden, I bequeath one hundred dollars, to be paid to her two years from the date of my decease." * * * "The whole remainder of my property, real, personal and mixed, I bequeath absolutely to my beloved wife Mary Jane Hutchman." The plaintiff here rested.

The defendant gave no evidence but submitted these points:

1. The plaintiff cannot recover under the plea in this case without showing more than the will of the decedent.

2. Under the plea of want of assets, the plaintiff must show that sufficient personal estate for the purpose over and above the amount necessary to pay the debts of decedent came into the hands of the executors to satisfy this legacy, otherwise she cannot recover.

3. The plaintiff on failure to show sufficient personal assets for the payment of the legacy cannot recover the legacy except by showing it to be a charge on the real estate and then only as against the devisee and not as against the executor, and cannot therefore recover in this action.

4. That in any event the burden of the proof is on the plaintiff to show all the matters necessary to charge the executor.

The court affirmed these points and further charged: * * *

"We further instruct you in the absence of evidence to show assets applicable as I have already said, that the devise to Maria Breden has by the terms of the will been made a charge upon real estate, and that in consequence of the residuary devise to Mrs. Hutchman, blending both real and personal property in the

[Breden *v.* Gilliland.]

bequest to her, the real estate devised to her is responsible for the payment of this legacy, and the remedy of the plaintiff is against such real estate, if any such may be found left by the decedent. And therefore if the facts shall be found by you as we have already instructed you the plaintiff has no merits, and therefore our permission of the pleas of record was not in contravention of any principle of law, in the order we have made in the opening of the judgment."

"Your inquiry then will be, are there assets in the hands of the defendant Mr. Gilliland sufficient to pay the plaintiff's claim, which he refuses to apply in payment of the same, as shown you in proof by the plaintiff, if so, then the plaintiff is entitled to your verdict, for the amount of $100 with interest from the 26th of March 1857. If not, then your verdict will be for the defendant."

The verdict was for the defendant.

The plaintiff removed the case to the Supreme Court and assigned for error:

1. Opening the judgment of June 7th 1861.

2. Granting leave to withdraw the pleas and file a demurrer.

3. Striking off the judgment entered on the verdict September 27th 1868.

4–7. The affirmance of the defendant's points.

8. The foregoing portion of the charge.

*R. B. McComb* and *J. McMichael,* for plaintiff in error.— It was too late to strike off the judgment of 1861: Matthers *v.* Patterson, 9 Casey 485; Commonwealth *v.* Mayloy, 7 P. F. Smith 291; Catlin *v.* Robinson, 2 Watts 373. Act of February 24th 1806, sect. 22, 4 Smith L. 275, Purd. 158, pl. 113. The plea of want of assets ousted the jurisdiction of the court and the terms of opening the judgment therefore excluded the plea.

*R. Gilliland* and *D. Craig,* for defendant in error.

The opinion of the court was delivered, January 3d 1871 by

SHARSWOOD, J.—In the nature of the case there is not and ought not to be any limitation of time to the power of a court to open a judgment entered by default for want of appearance. The lien of the judgment on real estate is not thereby disturbed, and even if there should be an outstanding *fieri facias,* and a levy under it on personalty, it is always in the power of the court to impose such terms as will preserve the lien of the execution or substitute sufficient security in the place of it. Thus no injury is done to the plaintiff beyond the delay. On the other hand, the liability of the sheriff and his sureties for a false return of "served" to the original process, may be entirely lost to the de-

[Breden *v*. Gilliland.]

fendant, and a plaintiff, conscious of the inherent weakness of his cause, may purposely lie by, and suffer his judgment to sleep until the time for moving to open the judgment shall have elapsed. Thus irreparable injustice might be done to a defendant entirely ignorant that any proceeding had been instituted against him. The opening of such a judgment is, therefore, a matter purely within the discretion of the court below, which cannot be reviewed here. Nor for the same reason can we sustain the second error assigned to the order of the court, in granting leave to the defendant to withdraw his pleas and file a demurrer to the declaration.

Had the plaintiff taken a writ of error on the order of the court of March 26th 1869, striking off the judgment of September 27th 1868, entered on the verdict of a jury, without taking any subsequent steps in the cause, there would be much reason to think that it could not be sustained as the record now stands. Opening a judgment and striking it off are two entirely different things. No court has power to strike off a judgment regular on its face. If there was a fact which ought but did not appear of record, which would render it irregular—as for example such as is alleged here, a point of law reserved at the trial—that fact should have been put upon the record by an amendment *nunc pro tunc*. The plaintiff, however, acquiesced in the order of the court, and went on to trial. It is entirely too late after this to take advantage of the error.

The remaining assignments of error all depend upon a single question, and may be considered together. The case, which was an action of debt to recover a legacy, went to trial upon a plea of *nil debet* and it may be some other pleas. There was also a plea of want of assets. The learned judge below ruled, and so instructed the jury, that the question for them was whether there were personal assets in the hands of the executor sufficient to pay the claim of the plaintiff, and that if they found that there were not, their verdict should be for the defendant. In this we think there was error. The plea of want of assets was not before the jury for their determination. Their power was only to decide the issues upon the other pleas. The question of assets is committed by the law to another and more appropriate tribunal—the Orphans' Court. The Act of March 21st 1772, 1 Sm. L. 383, entitled "An act for the more easy recovery of legacies," provided in the third section, "that the respective courts, where the said actions shall be commenced upon the plea of the want of assets to pay all debts and legacies, shall appoint auditors to examine the accounts of the executors, &c., and upon their report the court shall award execution for such amount as shall be found payable to the plaintiff from the assets, and the judgment shall remain a security for the payment of the remainder of the said legacies

[Breden *v.* Gilliland.]

and costs, when sufficient assets for the payment thereof come to the executors' hands.

This act, which was a temporary one, but made perpetual by Act of October 9th 1779, 1 Sm. L. 473, was a re-enactment of a former temporary Act of February 3d 1742–3, 1 Miller 150, which was continued from time to time and then expired. This machinery was cumbrous and expensive and to be repeated in every action, and accordingly in pursuance of a general and wise policy of committing all settlements of decedents' estate to the Orphans' Court, the Act of February 24th 1834, Pamph. L. 83, which supplied and superseded the Act of 1772, introduced a more simple and efficient course of procedure. By the fifty-third section of that act, if the executor shall plead to an action for a legacy, want of assets, without any other plea, no further proceedings shall be had until an account shall have been taken in the proper Orphans' Court; and by the fifty-fourth section, "If any other pleas be pleaded by such executor, the issue thereon shall be decided in due course, as in other cases"—and after judgment the executor may aver want of assets, and thereupon execution shall be stayed until such account is taken as is provided in the preceding section. "The issue thereon" is plainly the issue upon the other pleas, rather than the plea of the want of assets. It follows then clearly that the issue on the plea of want of assets was not before the jury. It is not referred to them by the law to try and decide; but after verdict deciding plaintiff's right to the legacy, and its amount upon the other issues, the question of assets wherewith to pay it, and what proportion the plaintiff shall receive, if anything, if the assets are insufficient to pay all the legacies, is referred to a subsequent proceeding in the Orphans' Court.

It may be true that by the residuary clause in the will of Josiah Hutchman, of which, however, we have not been furnished with a copy, blending together his real and personal estate, the legacies were charged upon the land; and it certainly is true that by the fifty-ninth section of the Act of 1834, the sole remedy of the legatee to reach the land is now by bill or petition in the Orphans' Court: Downer *v.* Downer, 9 Watts 60; Strickler *v.* Sheaffer, 5 Barr 240; Miltenberger *v.* Schlegel, 7 Id. 241. When a legacy is exclusively payable out of the land in possession of the heir or the devisee, this is the only remedy. But this is not a proceeding to charge the land. The primary fund for the payment of all legacies, whether charged on land or not, unless special provision is made to the contrary, is the personal estate. "The rule is general," says Mr. Roper, "that in the absence of contrary intention, the personal estate is the first and natural fund for the payment of debts and legacies; and the real estate is only to be resorted to in aid of the former:" 1 Roper on Legacies 463. "When the real estate is merely charged with those demands, the

[Breden *v.* Gilliland.]

personal assets are to be applied in the first place towards their liquidation :" Ibid. 574. The plaintiff, therefore, not only had the right, but it would seem was bound to proceed against and exhaust the personal estate before she could resort to her remedy against the land. It is not true then, as contended by the plaintiff, that the plea of no assets had the effect to oust the jurisdiction of the court, and therefore should not have been allowed to be filed under the order of the court in opening the judgment, that no objection should be taken to the form of the action, or the jurisdiction of the court.

Judgment reversed and *venire facias de novo* awarded.